SM

CARL A. WESCOTT
8210 E. VIA DE LA ESCUELA
SCOTTSDALE AZ 85258
CARL.WESCOTT@CAPITALIDE.AS
*IN PROPRIA PERSONA*
+1 276 773 7377

**RECEIVED**

DEC 1 2 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

CARL A. WESCOTT,

       Plaintiff,

       vs.

FIRST AMERICAN FINANCIAL CORPORATION;

FIRST AMERICAN TITLE INSURANCE COMPANY;

       Defendants.

+ DOES 1 through 10

Civil Action No.

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

1:23-cv-16709
Judge John Robert Blakey
Magistrate Judge Heather K. McShain
Random Assignment
Cat 3

## VERIFIED COMPLAINT

Plaintiff Carl A. Wescott, proceeding *pro se*, using the assigned legal claims of Callister LLC (Exhibit A) complaints of Defendants First American Financial Corporation and First American Title Insurance Company (collectively, "the Defendants" or "First American") and alleges as follows:

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

1

**JURISDICTION AND VENUE**

1. This is an action for damages pursuant to 28 U.S.C. §1332 (complete diversity of citizenship and claim over $75k). The Plaintiff (and Callister LLC) are citizens of Arizona, while the Defendants, headquartered in Orange County, California, are citizens of Delaware and California.

2. The Defendants have offices, employees and other *indicia* in this district.

3. Supplemental jurisdiction over the Plaintiff's Illinois state law claims is pursuant to 28 U.S.C. § 1367(a) and the facts that the tortious acts, non-acts, and negligence complained of herein occurred in this district.

**PARTIES**

1. Callister LLC is a single-member LLC, an Arizona entity.

2. Carl A. Wescott is an individual who resides in Scottsdale Arizona. To distinguish Carl A. Wescott, the person, from the Plaintiff (Carl Wescott using Callister LLC's legal claims), this legal complaint shall refer to the person as "Carl Wescott" as opposed to "the Plaintiff."

3. Defendant First American Financial Corporation is a Delaware Corporation with its principal executive offices and corporate headquarters located at 1 First American Way, Santa Ana, California. First American Financial Corporation is a citizen of the States of Delaware and California. First American Financial Corporation conducts business throughout Illinois, the United States, and the world.

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

2

4. Defendant First American Title Insurance Company is a subsidiary of First American Financial Corporation, with its Illinois office at 30 N LaSalle Street, Suite 2700, Chicago, IL 60602.

## CASE SUMMARY

The Plaintiff is using the assigned legal rights and claims of Callister, LLC (Exhibit A). Carl Wescott, the person, opened escrow on behalf of a corporate lender with First American Title to handle escrow and title insurance for a transaction with Mr. Robert D. Shearer, Jr. Switching lenders along the way, Callister, LLC (now the Plaintiff) was to loan $22,134 to Mr. Shearer, not including points and fees on the principal, and not including Callister LLC's return.

Originally the loan was going to be a 15-to-30 day loan secured by a 1st Mortgage on 1400 West Sherwin, Chicago, IL 60626. However, First American Title was weeks slower than promised with necessary logistics including the preliminary title report. The day before the anticipated signing (February 20th), the Plaintiff asked FATI to change the loan to a 7-to-15-day loan. FATI instead cancelled the escrow and transaction without talking to the Plaintiff. Mr. Shearer then stopped communicating with the Plaintiff, fell ill, and died. Callister LLC lost the $22,780.68 ($22,134 + 2 points + $200 in fees) Deed of Trust against 1400 West Sherwin.

The administrator of Mr. Shearer's estate has sold 1400 West Sherwin. If Callister LLC had had the mortgage/Deed of Trust it should have (if FATI had not breached and cancelled the escrow), Callister would have had its capital returned by now ($22,780.68 + interest).

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

## ALLEGATIONS REGARDING CONSPIRARY

4. Upon information and belief, there are many more defendants, including individual Defendants. Those additional Defendants shall emerge with the benefit of legal discovery.

5. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, those individual defendants, in addition to acting for himself and herself and on his or her own behalf individually, as well as for the benefit of his or her marital community (if any), is and was acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

6. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all the other Defendants.

7. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

8. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, the First American defendants, in addition to acting for themselves and on their own behalf, is and was acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

4

Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

9. In addition, upon information and belief, there are even more corporate, trust, and other entity type Defendants currently unknown to Plaintiff, that shall emerge with the benefit of legal discovery.

10. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, any and all such additional corporate entities, in addition to acting for itself and for its own behalf, was acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

11. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all the Defendants.

12. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

**Subject-Matter Jurisdiction – Background and Legal Standards**

13. With damages of $75,000 and the diversity of citizenship of Plaintiff and Defendants, the Plaintiff would qualify for United States District Court under 28 U.S. Code § 1332(a)(1):

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

DIVERSITY OF CITIZENSHIP; AMOUNT IN CONTROVERSY; COSTS

**(a)**The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

**(1)** citizens of different States;    *(28 U.S. Code § 1332 (a)(1))*

14. The Plaintiff resides in Arizona and the Defendants are citizens of California and Delaware, with offices in Illinois.

15. Thus, the parties have complete diversity of citizenship.

16. The Plaintiff will add the facts, logic, and reasoning supporting the Plaintiff's thinking that his recoverable damages will be greater than US $75,000.

17. To qualify for federal court under complete diversity of citizenship, the amount in controversy must exceed the sum or value of $75,000, exclusive of interest and costs *(28 U.S.C. § 1332(a) (2014))*.

18. The determination of the amount in controversy for federal subject matter jurisdiction is an issue decided under federal law. 14AA FEDERAL PRACTICE AND PROCEDURE § 3702 (4th ed. 2014) [hereinafter "FEDERAL PRACTICE"]. See *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352 (1961).

19. Federal courts will, however, look to applicable state law to determine the nature of the plaintiff's substantive claim and related damages. FEDERAL PRACTICE § 3702. See *Horton*, 367 U.S. at 352-353.

20. Numerous courts, including the United States Supreme Court have held that the amount in controversy for jurisdictional purposes is measured by the direct pecuniary value of the right that

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

the plaintiff seeks to enforce or the value of the object that is the subject matter of the suit. FEDERAL PRACTICE § 3702.5. See *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L. Ed. 1067 (1947).

21. The direct pecuniary value of the right is simply an estimate of the total amount in dispute rather than an assessment of liability. *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

22. The amount in controversy is determined without considering accrued or accruing interest or the costs associated with the lawsuit. (*28 U.S.C. § 1332(b)*)

23. Courts have held that collateral effects will not be taken into account when calculating the amount in controversy. FEDERAL PRACTICE § 3702.5. See *Healy v. Ratta*, 292 U.S. 263, 267 (1934) ("the collateral effects of the decree, by virtue of stare decisis, upon other and distinct controversies, may not be considered in ascertaining whether the jurisdictional amount is involved, even though their decision turns on the same question of law."). See also *New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892) ("It is well settled in this court that, when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur.").

24. The amount in controversy may include compensatory damages including general and special damages such as pain and suffering and out of pocket loss. The amount in controversy may also include punitive damages. *Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996); *Watson v. Blankinship*, 20 F.3d 383, 386-387 (10th Cir. 1994).

25. When there is direct legal authority, by statute or contract, for the recovery of attorneys' fees, then the fee claim may be included in determining the amount in controversy regardless of whether the award of fees is mandatory or discretionary. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 155-1156 (9th Cir. 1998).

**Subject-Matter Jurisdiction with the Alleged Facts of this Particular Case**

26. The Plaintiff may get an attorney for this case in the future.

27. The Plaintiff lost $22,780 due to the tortious acts, non-acts, and negligence of the Defendants.

28. The Defendants had a duty to the Plaintiff, the Defendants' customer.

29. The Plaintiff expects to prove willful and wanton neglect and negligence on the part of the Defendants, and thus expects to be awarded exemplary damages, that might double or triple the $22,780 base damages (to the range of $45,560 to $68,342).

30. The Plaintiff does reasonably assume that the cost of an attorney, when he hires one, will be at least tens of thousands of dollars, even if he hires one later in our legal process. Let's assume that attorney fees will be $60,000 or more (which the Plaintiff would get back as part of the judgment or award at trial, or in any settlement along the way).

31. Thus, the Plaintiff believes that relevant damages for the possibility of federal subject matter jurisdiction are between $105,560 and $128,342, exceeding the $75,000 threshold.

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

8

## NARRATIVE AND SUMMARY OF FACTS

1. The Plaintiff is using the assigned legal rights and claims of Callister, LLC (Exhibit A).

2. Carl Wescott opened escrow with First American Title to handle escrow and title insurance for a transaction with Mr. Robert D. Shearer, Jr.

3. The Plaintiff was to loan $22,134 to Mr. Shearer, not including points and fees on the principal, and not including Callister LLC's return. With points and fees, the loan principal amount was $22,780.

4. Originally, the loan was going to be a 15-to-30 day loan secured by a 1st Mortgage on 1400 West Sherwin, Chicago, IL 60626. However, First American Title was weeks slower than promised.

5. The day before the anticipated signing (February 20th), the Plaintiff asked FATI to change the loan to a 7-to-15-day loan.

6. FATI instead cancelled the escrow and transaction without talking to the Plaintiff (Exhibit B, email to Carl Wescott).

7. Mr. Shearer then converted the funds from Callister LLC that should have been in Shearer's IOLTA trust account and transferred to the Defendants for the loan closing, stopped communicating with the Plaintiff, fell ill, and died.

8. As a result, the Plaintiff could not effectuate the transaction that would have concluded (signing and recording) on February 21st, 2021, but for the Defendants' breaches.

9. As a result of those breaches as well as the negligence of the Defendants, the Plaintiff has been damaged in amounts including the lack of the ownership of the anticipated $22,780.68 ($22,134

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

+ 2 points + $200 in fees) First Deed of Trust against 1400 West Sherwin, and the subsequent payoff that would have occurred.

10. Mr. Shearer's (rest in peace) estate was in probate but had no monies for unsecured claims. Had the Plaintiff had the mortgage on 1400 West Sherwin that First American had promised to record, the Plaintiff likely would have been reimbursed from Mr. Shearer's estate, which has now been settled.

11. The administrator of Mr. Shearer's estate has already sold 1400 West Sherwin, and thus, the Plaintiff would have been paid back its loan money, but for the Defendants tortious acts.

## FURTHER COLLATERAL IMPACTS

12. To make things worse, the Plaintiff had a contract with Vivos Therapeutics, Inc., to market its oral appliance medical devices to dentists.

13. Under the terms of that contract, the Plaintiff would get paid $5000 for each converted lead.

14. The Plaintiff had a cost of leads of under $1/lead.

15. The client had a 30%+ close ratio.

16. Thus, for each dollar the Plaintiff invested in his digital funnel, he would get back, as hard to believe as it may sound, over $1500.

17. The whole point of getting the money back almost immediately on the 15-day mortgage to help his attorney was to invest in Vivos leads.

18. Some other things occurred that also impacted the Plaintiff's Vivos revenue, but it's likely that the Plaintiff lost another $100k+ as a consequence of the Defendants' breach of contract and unilaterally terminating his escrow.

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

10

19. The best approximation will be proven at jury trial based on the facts, likely with the help of an expert witness or two.

20. In order to right the scales of justice, the Plaintiff has had to file this legal complaint.

## DEMAND FOR JURY TRIAL

21. Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to a jury trial for his Constitutionally-protected petitioning rights. (Also, as per *Fed. R. Civ. P 38(b)*).

22. The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all triable facts and issues related to his current causes of action and any facts, issues, requests, and/or causes of action that the Plaintiff or his future attorney may add within the timelines allowed by this Court.

### Count I – Breach of Contract

23. The Plaintiff realleges paragraphs 1-22 as if fully set out herein.

24. The parties entered into a valid contract for the Plaintiff to pay for and for the Defendants to provide, escrow services ("the Escrow Contract"), as well as lender's title insurance.

25. On the day before anticipated closing, the Defendants breached the Escrow Contract on the contrived/spurious basis that they could not insure a 7-day loan for lender's title insurance, a previously undisclosed and utterly arbitrary excuse. (They had already committed to insure a 15-day loan).

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

11

26. The Defendants made no good faith attempt to contact Carl Wescott to inform the Plaintiff that the Defendants could not and would not insure a 7-day loan. Had they done so, the Plaintiff would simply have instructed them to change the loan back to a 15-day loan and the transaction would have been effectuated.

27. As an experienced real estate investor, the Plaintiff knows and can establish that there is no actuarially significant difference in the risk between a 7-day loan and a 15-day loan which the Defendant purported to be able to insure.

28. Should it be necessary, expert witnesses will testify as to the same.

29. The Plaintiff fully performed financially, providing monies for Shearer's IOLTA account that he was to either transfer to Defendants for the closing, or release after the recording of the notarized mortgage on 1400 West Sherwin.

30. The Plaintiff fully performed with information as well, providing everything the Defendants needed, and following up with them on several occasions when they continued to fall behind on their promises.

31. As a direct and proximate result of the Defendants' breach of contract, the Plaintiff lost tens of thousands of dollars in base damages that would already have been repaid.

32. The Plaintiff was further damaged in the lack of that capital by proximate events and lost opportunities, including the Vivos opportunity, to be fully proven at jury trial.

**Count II – Promissory Estoppel**

33. The Plaintiff realleges paragraphs 1-22 as if fully set out herein.

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

12

34. Alternatively and conjunctively, the Defendant promised to provide escrow eservices and to insure the parties' 7-day-loan ("the Promise").

35. The Defendant omitted to disclose its purported policy of not insuring 7-day loans ("the Omission").

36. The Defendant knew or should have known that the Promise and the Omission, whether separately or conjunctively, would induce reliance on the part of the Plaintiff.

37. The Promise and the Omission did in fact induce reasonable reliance on the part of the Plaintiff, inducing him to release funds to Shearer on the basis of a 7 day and not 15 day loan and to not contract with another title insurer.

38. As a direct result of the Plaintiff's reliance on the Promise and the Omission the Plaintiff lost the ability to claim between $22,780 at the time of the house selling due to the recorded instrument, as well as consequential damages, to be fully proven at jury trial.

**Count III – Equitable Estoppel**

39. The Plaintiff realleges paragraphs 1-22 as if fully set out herein.

40. By words and conduct, the Defendants conveyed a false representation of material fact, e.g. that it would insure the short-term loan and close escrow ("the Misrepresentation").

41. The Defendants expected or intended that the Plaintiff would rely on the Misrepresentation.

42. The Defendants, at the time they conveyed the Misrepresentation, possessed actual and/or constructive knowledge of the true facts, e.g. that the Misrepresentation was false and materially misleading.

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

43. The Plaintiff relied, in good faith, on the Misrepresentation by extending funds to Shearer in connection with a 7 day and not 15 day loan and not contracting with another title insurer.

44. The Plaintiff had no independent means of ascertaining the truth of the Misrepresentation.

45. As a direct result of the Plaintiff's reliance on the Misrepresentation the Plaintiff lost the ability to claim over $22,780 in short order and then hundreds of thousands of dollars more via Vivos closings (part of the consequential damages).

46. All facts, allegations and damages to be fully proven at jury trial.

### Count IV – Breach of the Covenant of Good Faith & Fair Dealing

47. The Plaintiff realleges paragraphs 1-22 as if fully set out herein.

48. In every contract entered into in the State of Illinois there is an implied paragraph of Good Faith and Fair Dealing which warrants that neither party will exercise its discretion in a manner that deprives the other part of the benefit of its bargain. *Harrison v. Sears Roebuck & Co.,* 551 N.E.2nd 310, 313 (1st Dist. 1990).

49. The Defendant exercised its discretion in connection with the escrow contract in a way that was fundamentally arbitrary – refusing to cover a 7 day as opposed to 15 day loan – in a manner that deprived the Plaintiff of the benefit of his bargain.

50. As a direct result of the Defendant's breach of the Covenant of Good Faith & Fair Dealing, the Plaintiff lost the ability to claim over $22,780 in short order and then hundreds of thousands of dollars more via Vivos closings (part of the consequential damages).

51. All facts, allegations and damages to be fully proven at jury trial.

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

14

### Count V – Consumer Fraud

52. The Plaintiff realleges paragraphs 1-22 as if fully set out herein.

53. The Promise and the Omission were material misstatements of fact under the Illinois Consumer Fraud & Deceptive Practices Act 815 ILCS 505/1 et seq. and occurred in the course of trade or commerce.

54. The Defendant intended that the Plaintiff rely on the Promise and the Omission.

55. As a direct result of the Defendant's Promise and Omission, the Plaintiff lost the ability to claim over $22,780 in short order and then hundreds of thousands of dollars more via Vivos closings (part of the consequential damages).

56. All facts, allegations and damages to be fully proven at jury trial.

### PRAYER FOR RELIEF

(a) As to Count I for all damages (including consequential damages) proximately caused by the Defendant's breach of contract;

(b) As to Count II for all damages proximately caused by the Plaintiff's reliance on the Defendant's Promise and the Omission;

(c) As to Count III for all damages proximately caused by the Plaintiff's reliance on the Misrepresentation;

(d) As to Count IV for all damages caused by the Defendants' breach of the Covenant of Good Faith & Fair Dealing;

(e) As to Count V for all damages proximately caused by the Defendants' violation of the Illinois

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

15

Consumer Fraud and Deceptive Practices Act as well as for reasonable legal and paralegal fees

thereunder and an aware of exemplary damages to punish and deter the Defendant from

breaching the Consumer Fraud & Deceptive Practices Act in the future;

(f) For the costs of this suit and;

(g) For future attorney's fees;

(h) For a reasonable value for the Plaintiff's time (*quantum meruit*) in representing himself until he

brings in an attorney.

(i) For such other and further relief as the Court deems just

RESPECTFULLY SUBMITTED on November 30th, 2023

_____

Carl A. Wescott, *pro se*

11/30/2023

## **VERIFICATION**

I, Carl A. Wescott, under penalties provided by law pursuant to section § 1-109 of the Code of Civil Procedure, certify that the facts set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____

Carl A. Wescott

11/30/2023

**PLAINTIFF's VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; EQUITABLE ESTOPPEL; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and CONSUMER FRAUD**

*EXHIBIT A*

## ASSIGNMENT OF CALLISTER LLC CLAIMS

WHEREAS, Callister LLC is the owner of legal claims ("the claims") related to an escrow and anticipated lender's title insurance set up with multiple operating First American entities.

COMES NOW, Callister LLC, of Scottsdale, Arizona, that hereby sets forth and agrees as follows:

1. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Callister LLC hereby assigns all legal right, title, and interest it may have in the claims, to Carl A. Wescott ("Wescott").

2. Callister LLC waives all right, title, claim and interest in these legal claims, whatever it or they may be, to Wescott free and clear of any claims of himself.

3. Wescott shall have all legal right and claim to the assigned legal claims. Wescott shall be afforded all legal rights and responsibilities pursuant to the legal claims as if he had been making the loans and benefitting from the contracts with the First American title entities himself.

4. Callister LLC makes no warranties or representations regarding the legal claims, and Wescott enters this Assignment after further review of the timeline and sequence of events.

5. Each party has had the opportunity to seek the guidance of an attorney of their own choosing in entering this agreement.

6. In witness whereof, the Assignor Callister LLC and the Assignee Carl Wescott have both executed this assignment on the November 2023 date set forth below. The assignment shall be effectuated when both parties have signed.

_____
Assignor Callister LLC
November 30th, 2023

_____
Assignee Carl Wescott
November 30th, 2023

1

 Gmail  Carl Wescott <carlwescott2020@gmail.com>

---

## final documents for the loan

---

**Kimberly Janz** <kjanz@firstam.com>                                       Thu, Feb 20, 2020 at 8:25 PM
To: Carl Wescott <carlwescott2020@gmail.com>
Cc: Audrey Huggins <ahuggins@firstam.com>, "Robert D. Shearer Jr." <shearerlaw@outlook.com>

Good morning Mr. Wescott,


Please note that we are declining to insure this transaction based on the fact that we are not disbursing the funds and because we cannot insure a seven day loan. The payment that you made in the amount of $350 will be returned to you.


Regards,


**Kimberly Janz, Esq.**                    [Quoted text hidden]

Title Operations Director

First American Title Insurance Company



27775 Diehl Road, Warrenville, IL 60555

Direct: 630-799-7084

Email: kjanz@firstam.com